Olsen v. Lee Kraus Well, let's see now. Have I got Mr. Bartels? Yes. Good morning, Your Honor. So, Mr. King, I think you're up, right? I am up. Thank you, Your Honor. Please proceed. Thank you, Your Honor. May it please the Court, my name is Jeff King, appearing on behalf of Appellant Lee Kraus, Jr. I'd like to reserve three minutes of my time for rebuttal. On the many dispositive issues that Mr. Kraus has presented to the Court, I'd like to focus first on one that has permeated Mr. Kraus's arguments throughout this case from summary judgment through trial and certainly post-trial. And this argument is one that of, under civil conspiracy law, dealing with a contract claim such as here, that you have a third party that's part of the conspiracy or that the plaintiff proved that the defendant, in this case Mr. Kraus, has an independent stake in the outcome of the alleged conspiracy. Mr. Kraus made this argument in summary judgment briefing, pre-trial motions, at trial and then following trial, asking for judgment in his favor or at least instructions in the key verdict director instruction 29 that the jury has to make a finding of a third party or a finding of this independent financial stake. Mr. King, you say in a contract case such as this, there's such a requirement, but I thought this was a breach of fiduciary duty case, not a contract case. It's a breach of fiduciary duty case, Your Honor, relating to a contract that's actually, I think, described by plaintiffs as a breach of fiduciary duty in facilitating a breach of contract. And those are not my description, it's ones from the plaintiff which I'm using here. Okay, I appreciate you're just quoting that, but the question is whether this rule that you're referring to is a breach of fiduciary duty as opposed to a breach of contract. Yes, Your Honor, and I believe I know we discussed this a bit in our brief, but in the Missouri Highway and Transport Committee case, as well as, or actually in that case, the court talks about how this concept prohibits all civil conspiracy claims against any other parties to the same contract unless a third party is involved in the conspiracy. It doesn't say all civil conspiracy claims for a breach of contract case related to contracting parties, all civil conspiracy claims relating to contracting parties, which is what we have here. Counsel, was that a breach of duty case? The highway transportation case, my understanding was that was not a breach of fiduciary duty case. There were claims other than contract claims in that case. I don't remember, recall exactly what all those other claims were that were covered within the civil conspiracy rubric, but I don't believe one of those was breach of fiduciary duty. And so, Your Honor, the inclusion in instruction, or the failure to direct an instruction 29 regarding either of these requirements was detrimental to Krauss for a number of reasons. Specifically, it allowed the jury to find a conspiracy claim against Mr. Krauss without showing any independent financial stake at all. There was no consideration of that by the jury, no direction of the jury to consider that as part of instruction 29, and it obliviated any need for a third party. Not only do we believe that this is a problem that requires a new trial based on the flaws of instruction 29, but we believe as well that this mandates reversible error, a remand and a directive verdict in favor of Mr. Krauss, because there is no evidence of a third party. I know in their response brief, plaintiffs talk about a wide variety of... You want an appellate court to grant you a directive verdict? What's your best case for that? I apologize for the use of directive verdict. A verdict is a matter of law because there is no evidence submitted whatsoever of a third party to this alleged conspiracy, nor is there any evidence at all of an independent financial stake, and a ruling as a matter of law is appropriate where there's no evidence that would meet the legal requirements at issue. Counsel, the district court's order has a lot of several pages in the order about interactions between several parties and non-parties of the agreement. Surely we get past some third party somewhere. Your Honor, the third party is one of the two requirements, but on the third party, if you look at jury instruction 29... Yeah, but address the district court's order, if we're going to talk about this, address the district court's order, and they've got a lot of stuff in there on this, don't they? They've got a lot of... Doesn't it? I'm sorry, I didn't speak very well. Proceed. Thank you, Your Honor. They have a lot of mentions of various interactions between the parties, but if you'll remember, Your Honor, there are a wide variety of claims here, and the only ones that pertain to Mr. Krause are involving the 2014 amendment itself. When you look at the evidence involving a conspiracy for the 2014 amendment itself, there are only four people that are mentioned, and those four people, you've got Mr. Krause, you've got Mr. Kaiser, you have Mr. Jensvold, and you have Giacomo DeMasi. The latter three of those are all affiliated with Xerox, the former Mr. Krause with Duracell, eliminating any third party regarding that claim. The other issue that must be proven is a financial stake by Mr. Krause. The evidence the plaintiff cited is twofold in this. The first is receiving a salary by Mr. Krause from a parent company of Duracell. The court is very clear in the 8,000 Maryland case that receipt of a consulting fee or a salary or a payment is not an independent financial stake sufficient to carry this burden under law. That's the only evidence we have. There is testimony from Jose DeMasi saying he doesn't remember what the scope of Mr. Krause's was that he was asked to do on behalf of Duracell. That's not evidence supporting plaintiff's burden. That is a sign of uncertainty by one of the witnesses. So what we're asking on this is, on this element, this claim, given the lack of evidence supporting the third party, the independent financial stake, that the court find actually proper as a judgment as a matter of law in favor of the defendant, Mr. Krause. What about the... Counsel, the plaintiff was the corporation, right? And the claim against the defendants is a breach of their duty of loyalty and so forth. Why do you need a third party for that kind of a derivative claim? Importantly, Your Honor, and I think you've highlighted also an issue that's problematic with the way the jury instructions are raised. Mr. Krause had no duty of loyalty to Xerox. Mr. Krause is affiliated only with Duracell. Now, wait a minute. Now you're just asking us to toss out the jury verdict or what? I mean, you make that assertion, but... Your client violated the duty of loyalty and you say there's no duty. Come on. Actually, precisely there's no duty. Even plaintiff has admitted that there is no duty of loyalty by Mr. Krause to Xerox. But I thought the jury was charged to find whether Krause conspired with Kaiser, who did have a duty of loyalty to Xerox, and that's the theory of the plaintiff. Isn't that right? That is the theory of plaintiff, Your Honor. That's correct. Why do you need a third party if your man conspired with an insider at Xerox to violate the insider's duty to Xerox? Why isn't that enough to state a claim? Because under the Missouri Highway case and other authority, Your Honor, when you have a civil conspiracy claim that is related to a contract, having a conspiracy between the two sides to that contract is not sufficient to sustain a civil conspiracy. Well, now we're back to whether that's just a rule for contract breach claims or duty claims. But I understand your point. Counsel, we talked about it a lot, but the other side says, and it seems persuasive that you didn't raise the third party claim at trial at all. Um, with all due respect, Your Honor, I believe that's absolutely incorrect on the third party claim. The third party claim was raised at length in the summary judgment briefing, which this court has found is sufficient to maintain issues of law to preserve them. In the objection to the... Wait, wait, wait, not... Wait a minute, you gotta make... We're talking Rule 50 now, right? We're way past the summary judgment stage. Your rule, the argument by opposing counsel is your 50A motion dropped the ball. And you can't recover the fumble. And Your Honor, with respect, we raised this issue in particular in the objections to their instruction that we raised the issue in objections to the jury instructions that were raised. But what's your case or authority that says if you do all those things, you don't have to raise a sufficiency argument in a Rule 50 motion, 50A motion? And... Have we said that case? I have not cited that case. The 50A motion itself, Mr. Krause made a 50A motion at the end of trial that talked about deficiencies in the civil conspiracy argument, trying to incorporate the arguments he had before. There is... I don't know that Mr. Krause specifically said the intercorporate conspiracy doctrine or third party in his discussion of the conspiracy. In the 50A motion itself, and I have two points on that. One, Mr. Krause is a pro se party that this court has recognized liberal construction in pleadings and other presentations... Oh, not in Rule 50. Not when you've got a sophisticated businessman who chooses to defend himself. He's got to play by the rules. I... I don't think... I doubt you have a case that contradicts that. On the specificity of a pro se party on a Rule 50A motion, I do not, Your Honor. On efforts of pro se parties being liberally construed, even with people that may be sophisticated in other realms, but not in the minutia of civil procedure. There are cases on that that we cited in our briefing. There may be pleadings cases, but I doubt that they're trial practice cases. The... Oh, no, you don't have to obey the hearsay rules because you're pro se and so forth. And, Your Honor, one other point I do wish to make is Rule 50A applying to sufficiency of the evidence arguments is one thing if, as far as our request for a judgment in our favor. But as far as the request of an error of law that tainted the jury instruction such that we get a new trial, that all of the ways that we have raised that are sufficient, despite any Rule 50A deficiencies the court may find, to preserve that issue for a new trial request, which we've made in our briefing. I see I have two minutes left. I'd like to reserve that if possible for rebuttal. May it please the court. I'll first address the third party. Thank you very much, Your Honor. I'll first raise the third party issue, since that primarily was what was spoken to during opening. We don't believe it was preserved. The Rule 50 motion that was made simply said, Mr. Krause got up and said he made an oral motion and said that the trustee had shown almost no evidence at all to support conspiracy. And that's almost a quote. And the trustee had failed to meet his burden. That's interesting. It also listed the elements of conspiracy, right? Orally. Is that right? It did, I believe. Yes. And then he said there's no evidence, but there was no particular argument as to any element, no law provided, and no argument as to, you know, what the evidence was or what the evidence was not on any particular instruction. And Mr. Krause also didn't, he didn't offer a separate instruction on third party. And he actually, he did get an instruction, instruction 18 about that a corporation can't conspire with its own agent, unless that agent has an independent stake in the object of the conspiracy. But let me talk about the merits quickly. So basically, there's been two rules cited by Mr. King. He cites this Missouri rule, which is this Commerce Bank case, you know, that effectively that you can't have a conspiracy to breach a contract without a third party. And as has already been noted, our claim here was not a conspiracy to breach a contract. We're not saying that Mr. Kaiser, the Xerox fiduciary, breached the contract. That, in fact, doesn't even make any sense. Kaiser was not a Duracell fiduciary. We were saying that he was disloyal for not enforcing the contract. And so we don't even think that that rule has any applicability here. And I could go through and cite all of the evidence, much of which is stated in the trial court's order on the post-trial motion, about all the involvement of Krauss and other parties, you know, including I'm not going to recite all of it, that Krauss participated in discussions about the ultimate goal of obtaining the IP. He was involved in strategy sessions about the takeover of Xerox. He claimed to be an expert on fiduciary duty. He knew that there was supposed to be an independent review process for any transaction between Duracell and Xerox, and that that never happened. He knew Kaiser was breaching his fiduciary duties by not enforcing the contract. He knew that other conflicted directors were involved in making decisions about transactions between the two companies, directors who were on both boards. He knew that the amendment was ridiculously one-sided. He knew that the amendment that he drafted falsely said that Xerox's products didn't work, and that these statements were used as a pretext. These types of statements were used as a pretext to put Xerox into bankruptcy. And then, of course, there's internal documentation that both Krauss and Kaiser, Mr. Krauss and Mr. Kaiser, I'm sorry, they were concerned about the trustee, eventual bankruptcy trustee seeking internal documentation that would uncover this transaction. So this was a claim for breach of fiduciary duty, and the jury was charged to find that Krauss became part of this conspiracy from October, sometime between October 13 and September 14. Minimum purchases were initially reduced back in 13, okay? So, you know, there's more to this than just entering into the 2014 agreement. The other thing I think that's going on here by Mr. Krauss on this argument, he also cites the inter-company conspiracy doctrine, okay? But he seems to conflate that with this Missouri rule, okay? We don't believe that the inter-company conspiracy doctrine has any application here. That rule basically says that you can't have a conspiracy between an agent and a principal. But our theory is not that Mr. Kaiser conspired with Xerox, and our theory was not that Krauss conspired with Duracell. Our theory is that Krauss conspired with Kaiser. And Mr. Krauss can be held liable for his acts even if he is an agent of Duracell. And I'll cite a case which didn't make its way into the brief. It's Byers Brother, which is 329 Southwest 2nd, 393 at 396 Moab, 1959. But I know there's other cases as well to that effect that I've seen. But regardless... Would you submit a 28-J letter with that citation? Of course, Your Honor. Thank you. But regardless... You have anything better than an intermediate Missouri court from 1959? I could find something, Your Honor. Okay. Well, if that's the best you have, send it in. Okay. But Krauss was not an agent. As Judge Smith found, there was more than sufficient evidence to find that he was not... If there is a requirement for a third party, there was more than sufficient evidence that Krauss was that third party. He was not an agent of Duracell. He claimed he was an agent because he had a nominal or ceremonial title that had been orally conferred on him by Jose DeMasi. Well, Jose DeMasi says, I don't know who was involved in this contract. Well, who was paying Mr. Krauss? Not Duracell, who he claimed to be an agent of. He was paid by a completely separate third party called HDI as an independent contractor. He was also paid by another third party, Jose DeMasi, as a consultant, also a non-contracting party. So in short, we don't think either of these theories apply to this case. And regardless, we don't think that the issue was preserved either. Next, I'd like to speak to, and I'm also prepared, of course, to speak to preservation. I think I'll speak briefly on preservation because on reply, as I understand it, Mr. Krauss' counsel effectively argued that, you know, we had the instruction conference on a Wednesday morning. The night before, Judge Smith handed out the proposed instructions on Tuesday evening, and he said, okay, here are my proposed instructions. This is after everyone had submitted drafts of their proposed instructions previously, so on and so forth. Judge Smith said, you guys need to be prepared tomorrow morning at 8 a.m. to speak to these instructions and to let me know if you think they contain reversible error. And I want argument, I want facts, and I want the law supporting your positions. We show up on Wednesday morning at 8 a.m. We had that instruction conference. We went through what our objections were. Mr. Krauss went through and gave what his objections were, and he stated some on the record. And then Mr. Krauss was asked, are you ready to proceed, you know, with trial? And he said, yes. Okay, what they are now saying on reply, what happened later in the day, after the instruction conference was over, was that Mr. Krauss, during a break, I think, when the jury was out, said, hey, Judge Smith, can I ask you a question about these instructions? And Judge Smith said, we already had the instruction conference. No, I'm not going to let you do that. You can take it up with the Court of Appeals, which has been cited in the reply. That does not entitle, and what Mr. Krauss's position is now is, because Judge Smith did not allow him to ask that question, everything gets to come in, and everything is preserved. That is not the rule. We had the instruction conference. He stated his objections. Judge Smith had discretion to control his trial docket and the timing of that. He gave us notice when we were going to be able to make objections, and so the claim of, you know, that everything has been preserved is just without merit in our view, and I wanted to speak to that because I didn't get an opportunity, of course, after the reply. The other thing I'd like to- Could you entertain a question or two on the jury instructions themselves, or were you going to go on to something else? I was going to go on to something else, but I'm happy to answer whatever questions you have. Well, do you have instructions 28 and 29 there in front of you? I do. On instruction 28, what was the basis for bringing up the entirely fair concept? Is there some law that says that if a party breaches a fiduciary duty, there's no liability if the outcome was entirely fair? The only thing I could find was some Delaware law regarding shareholders, which didn't seem on point with a fiduciary duty claim. Do you know how that ended up in the instructions and what authority for that? I do. I think the issue about whether the business judgment rule applied or entire fairness review applied was- I believe it was briefed somewhat on summary judgment before trial. The rules in Delaware basically are this, that the business judgment rule does not apply to claims for breach of the duty of loyalty. If there's a breach of the duty of loyalty because someone is conflicted or doesn't look out for the best interest of the company, then the transaction can nevertheless be cleansed if it was entirely fair nevertheless. In other words, even if someone is disloyal, if the transaction that's entered into is nevertheless entirely fair to the corporation, there's no liability. What's the best case for that? Do you know off the top? We'll submit that as well. There's numerous cases. The Enright Trados case out of the- I believe it's the Delaware Chancery Court or the Delaware Supreme Court lays this out very, very nicely. I don't have the site handy, but I can get that for your honor. Enright Trados. Trados? Yeah. All right, we'll look it up. I didn't see anything that said a breach of loyalty was cleansed in that way, but maybe Trados will explain it. The other question I had was on number 29. I'm not sure this argument was really fully developed, but it shows up in a footnote in the reply brief, and that is in the first element there, the jury's charged to find that Kraus agreed with Jensvold, DeMoss, and or Kaiser. Now, what does that mean? Does that mean that Kraus could be liable if he agreed only with Jensvold? And if so, how does that prove a conspiracy with Kaiser? Right. I don't think that's what that means. First, I think this was an issue that was raised on appeal for the very first time. Each of these individuals, with the exception of Jensvold, Giacomo and Kaiser were established to have breached their fiduciary duties, and there was more than sufficient evidence that Tristan Jensvold had done the same thing as well. The other thing I would say is I think you're paying off of the or language in that paragraph first. The paragraph six language says that the 2014 amendment was executed. It was executed by Kaiser and Kraus, and that alone is sufficient to show an agreement as between Kaiser and Kraus. I'm not talking about sufficiency evidence, though. I'm talking about whether the jury was told that all they had to find was an agreement between Kraus and Jensvold. I think the answer is no, because in paragraph six, they also had to find an agreement between that Kaiser and Kraus had signed that was not in the best interest of Zurich. Well, they had to find that the amendment was executed. Right, and it was undisputed that it was executed by those two parties, those two individuals. Well, all right. I don't understand why Jensvold and Giacomo are in the first element when the claim is a conspiracy between Kraus and Kaiser. Because the evidence at trial showed that they all participated. So Jensvold and Giacomo De Masi were dual fiduciaries. They were fiduciaries of both Zurich and fiduciaries of Duracell. And even though they're conflicted, they are not supposed to be involved in negotiating or talking about this proposed amendment between Zurich and Duracell because they have two hats on. They have a hat for as a Duracell director and one for a Zurich director. And the evidence was that they participated in this scheme throughout to eliminate these minimum purchases. And that's why that language made its way into the instructions. Thank you, Your Honor. Mr. King for rebuttal. Thank you, Your Honor. Obviously, I'll answer any questions the court has. But in my short time, two points that Mr. Bartles raised. On the preservation issue itself, I have some issue with how the jury instruction conference and final revelation of the jury instruction is construed. At the final jury instruction conference, plaintiff themselves said, you need, judge, strike all the references to the duty of care. Strike all the references to controlling shareholder. As we're presenting the claims to the jury, those don't apply. Those are confusing in the instructions. The district court came back. It left in the duty of care portions of the instructions. It left in the controlling shareholder portions. For the first time, Mr. Krause sees that these instructions that everyone thought was going to be removed were in there. Mr. Krause tries to make an objection. And he's told specifically, quote, if you think there's error in the instruction, then you can present these arguments to the Court of Appeals. And, Your Honor, I especially maybe experienced counsel like Mr. Bartles, myself, would stop a judge and say, whoa, whoa, whoa, I need to make a record. Let me make a record here. I've seen no court that has held a pro se party to that standard, especially in an instance like this, where all the parties were in agreement on changes in the jury instructions that were supposed to have been made. The other point raised by Mr. Bartles on the intercorporate conspiracy doctrine, that works hand in hand with the third party requirement that we see in this case. What plaintiffs are trying to do is to make Mr. Krause the third party that's necessary under Missouri law. Trying to make Duracell, Xerox, and Mr. Krause. The intercorporate conspiracy doctrine limits their ability to separate Mr. Krause from Duracell to create this third party unless there is some evidence that Mr. Krause has an independent stake outside of money that he's paid for performing services, which there is none in this case. And with that, Your Honor, if there are no questions, I see my time has expired. We would ask the court to remand this case for a new trial if they don't reach sufficiency of the evidence. And if you do, we would ask for a reversal of the jury record. Thank you, Your Honors. Thank you, counsel. It's a complicated case. It's been thoroughly briefed and well-argued, and we'll take it under advisement.